No. 39,667

In the Matter of the Estate of Randal Dikeman, Deceased. (ELSIE MARDIS, *Appellant*, v. WANDA LORRAINE KONOLD and SHIRLEY ANN LAWTON, Executrices of the Estate of Randal Dikeman, Deceased, *Appellees.*)

(284 P. 2d 622)

Opinion filed June 11, 1955.

*Payne H. Ratner*, of Wichita, argued the cause, and *Louise Mattox, Payne H. Ratner, Jr., Russell Cranmer, Dale B. Stinson, Jr., Carroll F. Pope, Keith Eales, Cliff W. Ratner*, and *William L. Fry*, all of Wichita, and *Max C. Bucklin*, of Pratt, were with him on the briefs for the appellant.

*Eldon L. Meigs*, of Pratt, and *Paul R. Wunsch*, of Kingman, both argued the cause, and *Richard Barrett* and *George Barrett*, both of Pratt, and *Charles H. Stewart*, of Kingman, were with them on the briefs for the appellees.

The opinion of the court was delivered by

PARKER, J.: This action originated with the filing of a petition, in the nature of a claim, in the probate court to recover damages from the estate of a decedent for personal injuries sustained by the claimant while riding as a passenger in the decedent's automobile. Pursuant to a request included in that pleading the cause, as authorized by statute (G. S. 1949, 59-2402), was transferred to the district court where all subsequent proceedings were had.

The petition contains two causes of action. The first seeks to recover damages for plaintiff's own personal injuries and the second, based on the allegations of the first, is for the benefit of her husband, as the statute permits (G. S. 1949, 23-205), for loss sustained by reason of her inability to perform services in the household and in the discharge of her domestic duties as the result of the involved accident. The first cause of action fully discloses the facts, as well as the theory, on which plaintiff bases her right of recovery and portions thereof, particularly all allegations throwing light on whether the guest statute (G. S. 1949, 8-122b) has application, should be quoted at length.

Limited as above indicated and omitting formal averments, allegations of no consequence to the appellate issue including those of the second cause of action, assertions as to the nature and extent of injuries sustained, and the prayer, the petition reads:

"I.

"Petitioner, Randal Dikeman, Deceased, Mrs. Randal Dikeman, Deceased, Mrs. Lanice Hoffman and Mrs. Ernest Munch were at all times material herein, members in good standing of the Sarah E. Stewart, Chapter 150 of the Order of the Eastern Star, Pratt, Kansas. That petitioner was at the time of the collision, resulting in her injuries, hereinafter alleged, Worthy Matron of said Sarah E. Stewart, Chapter 150, of the Order of the Eastern Star, and said Randal Dikeman, Deceased, was at the time of the said collision a past Worthy Patron of said Chapter and Mrs. Randal Dikeman, Deceased, was at the time of said collision, a past Worthy Matron of said Chapter. That said Randal Dikeman, Deceased, Mrs. Randal Dikeman, Deceased, and petitioner were

delegates to the Grand Chapter of the Order of the Eastern Star for the State of Kansas at all times material herein.

"II.

"That a Grand Chapter meeting of said Order was to be held in Topeka, Kansas, between the 21st day of April, 1953, and the 23rd day of April, 1953. That the Grand Chapter of the Order of the Eastern Star for the State of Kansas is composed of delegates from the various local chapters throughout said State and at its Grand Chapter meetings conducts business sessions at which rules, orders, regulations, by-laws and directives are discussed and adopted which have a direct and proximate bearing upon the government of said local chapters throughout said State. That the delegates from the various local chapters have a vote at said business sessions and can and do influence the adoption or rejection of any and all proposals submitted, including those affecting the regulation and government of said local chapters throughout said State.

"III.

"On or about the 21st day of April, 1953, Randal Dikeman, Deceased, Mrs. Randal Dikeman, Deceased, and petitioner left the City of Pratt, Kansas, for Topeka, Kansas, in a 1953 Lincoln Sedan owned and driven by Randal Dikeman, Deceased. That the purpose of said trip was to attend the April, 1953, Grand Chapter meetings of the Order of the Eastern Star for the State of Kansas, as delegates and representatives of the Sarah E. Stewart, Chapter 150 of said order. That it was the purpose and intent of said delegates and of said Sarah E. Stewart Chapter 150, of the Order of the Eastern Star, that said delegates should represent the interests of said local chapter at the business sessions of said Grand Chapter meetings and were to vote accordingly for the adoption or rejection of any and all proposals submitted.

"IV.

"The Grand Chapter of the Order of the Eastern Star for the State of Kansas authorized the payment of petitioner's transportation costs to and from the April, 1953, Grand Chapter meetings at Topeka, Kansas, and the deceased, Randal Dikeman, agreed to accept payment for the transportation of this petitioner.

"V.

"That on said trip to the April, 1953, Grand Chapter meeting Randal Dikeman, Deceased, Mrs. Randal Dikeman, Deceased, and this petitioner were accompanied by Mrs. Lanice Hoffman and Mrs. Ernest Munch.

"VI.

"Petitioner, Randal Dikeman, Deceased, and Mrs. Randal Dikeman, Deceased, did attend said April, 1953, Grand Chapter meeting of the Order of the Eastern Star at Topeka, Kansas, and did represent the interests of said Sarah E. Stewart Chapter 150, of the Order of the Eastern Star, at the business sessions thereof.

"VII.

"On the 24th day of April, 1953, while returning from said Grand Chapter meeting and at a time when this petitioner was being transported as a passenger in said 1953 Lincoln Sedan, which was then owned by and was being driven by said Randal Dikeman, Deceased, at approximately 12:20 p. m., said Randal Dikeman, Deceased, while driving said Lincoln in a westerly direction on State Highway K-61, in the County of Reno, approached the town of Turon, Kansas. That it was lightly raining at the time, the roadway was straight and level and of blacktop material. As said Randal Dikeman, Deceased, entered the town of Turon, he never reduced his speed but continued in a westwardly direction on said highway toward the intersection of same with the tracks of the Missouri Pacific Railroad Company, which crossed said highway in a generally north and south direction, at the western limits of said town. That said intersection was marked by a railroad crossing sign approximately 450 feet east of said intersection and the view of said intersection was clear and observable to the deceased Randal Dikeman for approximately said distance.

"VIII.

"That a Missouri Pacific diesel freight train proceeding in a southerly direction, ringing its bell and blowing its whistle, entered said intersection prior to and at a time when it was clearly observable to said deceased Randal Dikeman. Said Randal Dikeman failed to decrease his speed although said train was clearly observable to him and said train's bell and whistle were clearly audible to him, and continued in a westwardly direction at a high and excessive rate of speed within the city limits of Turon and drove his vehicle directly into the left side of said diesel engine without ever applying his brakes. As a direct and proximate result of the carelessness and negligence of said Randal Dikeman, Deceased, Elsie Mardis, petitioner herein suffered the injuries and damage hereinafter stated."

The defendants, who are the duly qualified and acting representatives of the estate of Randal Dikeman, deceased, moved to make the foregoing petition more definite and certain in a number of particulars. So far as important to allegations of that pleading as heretofore quoted this motion was directed to paragraph IV of such pleading and asked that its allegations be made more definite and certain by stating, with respect to the agreement therein referred to, whether such agreement was oral or in writing and if oral by stating the parties thereto; the time it was made; the terms and provisions thereof, particularly the amount to be paid Randal Dikeman; and whether payment for plaintiff's transportation was ever actually made by petitioner or anyone else to such decedent.

When the heretofore mentioned portion of the motion to make more definite and certain was sustained by the trial court the plaintiff filed an amended petition which, except for its paragraph IV,

contains all allegations to be found in the petition as heretofore quoted. Pertinent allegations of such paragraph, as amended, read:

"The Grand Chapter of the Order of the Eastern Star for the State of Kansas authorized the payment of petitioner's transportation costs to and from the April, 1953, Grand Chapter meetings at Topeka, Kansas; that prior to leaving for said Grand Chapter meetings, it was (orally and) mutually understood and agreed between the deceased, Randall Dikeman, and this petitioner that said Randall Dikeman would be paid a reasonable sum by petitioner for transporting petitioner to said meetings; that on or about the 24th day of April, 1953, the deceased, this petitioner, Mrs. Lanice Hoffman and Mrs. Ernest Munch, while having breakfast in the coffee shop at the Kansan Hotel in Topeka, Kansas, discussed the amount of payment the deceased should receive from each of said parties in consideration for their transportation by him from Pratt, Kansas, to Topeka, Kansas, and return, and decided same should be reasonable and that the amount of said payment would be finally fixed and determined upon completion of the return trip to Pratt, Kansas. Subsequent to the making of said agreements, said parties proceeded to return to Pratt, Kansas, and said trip resulted in the collision as hereinafter alleged.

"That as a result of the death of Randal Dikeman and because of the serious and painful injuries suffered by petitioner, no payment for petitioner's transportation, in accordance with said contract, has actually been made; that the distance between Pratt, Kansas, and Topeka, Kansas, and return (by highway), is 468 miles; that six (6) cents per mile is reasonable and petitioner herewith tenders the sum of $28.08 to this court in payment of said transportation. . . ."

Purely for informative purposes it should perhaps be stated that although the words *orally and,* appearing in parenthesis in the foregoing quotation, were not a part of the first amended petition when initially filed they are now a part thereof by reason of the trial court's action in permitting the plaintiff to amend that instrument by interlineation.

With the amended petition, hereinafter referred to as the petition, containing allegations such as have been heretofore quoted the defendants' motion to strike certain of its allegations and make others more definite and certain was overruled. Thereupon defendants leveled a demurrer against the petition. This demurrer was ultimately sustained by the trial court on the ground such pleading failed to state a cause of action. Plaintiff has appealed from that ruling and judgment.

Preliminary to a discussion of the merits of the cause it may be stated there is no controversy between the parties respecting the fundamental issue involved on appellate review. Counsel seem to agree the correctness of the trial court's order and judgment depends

upon the status of appellant while riding in the Dikeman automobile at the time of the accident. In fact all contentions revolve around the guest statute of this state ( G. S. 1949, 8-122b ), which reads:

"That no person who is transported by the owner or operator of a motor vehicle, as his guest, without payment for such transportation, shall have a cause of action for damages against such owner or operator for injury, death or damage, unless such injury, death or damage shall have resulted from the gross and wanton negligence of the operator of such motor vehicle."

Without specific discussion we pause here to note the tenor of all the adverse arguments made with respect to the trial court's ruling. On the one hand appellant argues the allegations of the petition are of such character as to preclude application of, or bring her within the scope of, the foregoing statute. On the other appellees insist the averments of the petition are such as to compel the conclusion appellant was a guest, within the meaning of that term as used in such statute. The reason for the positions assumed by the respective parties, although not here important or decisive of the issue, are obvious and may be stated in pedagogic fashion. If the statute has no application, as she contends, it is apparent from an examination of the petition in its entirety appellant has pleaded facts sufficient to state a cause of action based on ordinary negligence. If, as appellees contend, those facts establish appellant was a guest in the Dikeman automobile at the time of the accident in question such statute, since the allegations of the petition are insufficient to establish the gross and wanton negligence contemplated by its terms, precludes her recovery.

Inasmuch as our decision of the all decisive issue raised on appellate review requires a construction of the petition a contention advanced by appellees to the effect that pleading is to be strictly construed must be first considered and determined. Heretofore we have directed attention to the fact the petition in its present form was amended as the result of the sustaining of a motion to make more definite and certain, the grounds of which have been previously stated. Mention has also been made of the fact a second motion to make such petition more definite and certain was filed and overruled. It should now be stated this last motion, based on the theory the order respecting the first motion to make more definite and certain had not been complied with, was overruled by the trial court with the comment, and on the ground, it thought paragraph 4 of the petition as amended was in compliance with its prior order.

Notwithstanding, appellees contend for strict construction on the basis this second motion to make more definite and certain was successfully resisted and erroneously overruled. We are not disposed to labor contentions advanced on this point. It suffices to say that upon review of the grounds of the first motion to make more definite and certain and the 4th paragraph of the petition we are not only satisfied the trial court's conclusion respecting compliance with its order on the first motion was proper but convinced the petition, as it now stands, alleges facts which fairly apprise appellees of the nature of appellant's claim and bring it within the rule announced in *Henderson v. National Mutual Cas. Co.*, 164 Kan. 109, 187 P. 2d 508, requoted with approval in *Noel v. McCaig,* 174 Kan. 677, 258 P. 2d 234, where it is said:

"The ultimate question, therefore, is whether material portions of petitions challenged by motions to make definite and certain fairly apprised defendants of the nature of plaintiffs' claim. If they did the motions were properly overruled and plaintiffs are entitled to have the third amended petition liberally construed in their favor . . ." (p. 112.)

Having concluded the petition comes under the rule of liberal construction it is well, at this point, to note that notwithstanding such pleading is subject to and must be construed in the light of other well-established rules. One is that in construing the sufficiency of any pleading all of the allegations thereof are to be considered together, and it is not proper to segregate allegations and determine their sufficiency without regard to the context of the whole pleading (*Fyne v. Emmett,* 171 Kan. 383, 233 P. 2d 496; *Emrie v. Tice,* 174 Kan. 739, 740, 258 P. 2d 332). Another is that when the whole of the pleadings are considered together and where any two allegations of the same party are inconsistent with each other the allegation most unfavorable to such party will be deemed to override the other (*Wood v. Stewart,* 158 Kan. 729, 732, 733, 150 P. 2d 331, and cases there cited; also 71 C. J. S., Pleading, 139 § 54). Still others are that the fact a pleading is to be liberally construed does not mean that its plain averments are to be modified or that the pleader is not bound by them (*Burks v. Aldridge,* 154 Kan. 731, 733, 121 P. 2d 276); or that its allegations are to be extended to the point where the rule requires an obviously erroneous construction of their meaning (*Hidalgo v. Kansas Milling Co.,* 176 Kan. 221, 223, 269 P. 2d 1029); or that all its allegations are not to be considered in determining whether the pleader has set forth facts which pre-

cluded his recovery (*Jones v. Jones,* 161 Kan. 284, 293, 167 P. 2d 634; 41 Am. Jur., 353 § 88).

With rules governing construction of the petition established we turn to consideration of the principal issue. At the outset, contending it must be answered in the negative, appellees pose the following question:

"Is an alleged oral agreement between the owner and operator of an automobile and an occupant, which provides for the payment at some indefinite future time of an indefinite sum by the occupant to the owner and operator for certain transportation of the occupant, sufficient to remove the occupant from the status of guest as contemplated by G. S. 1949, 8-122b?"

The essence of all arguments advanced by appellees in support of their position on this point is that the terms of the agreement pleaded are so vague and indefinite as to make such contract unenforceable. Let us see. In the first place the hypotheses on which appellees propound the question are erroneous. The petition alleges the amount to be paid would be a reasonable sum, not an indefinite or unascertainable one and, instead of specifying payment of that reasonable sum was to be made at some indefinite future time as appellees contend, it provides such amount would be finally fixed and determined upon completion of the return trip to Pratt. In the next, when the allegations of paragraph 4 of the petition are reviewed in their entirety and accepted as true, as they must be in ruling on the demurrer, we are quite certain Dikeman upon his return to Pratt, if he had lived, could have maintained an action and recovered from appellant on the contract as pleaded. Therefore, assuming for present purposes that other allegations of the petition are sufficient to remove appellant from the status of a guest in the automobile at the time of the accident, we have no difficulty in concluding appellees' position on the question now under consideration lacks merit and cannot be upheld, Nor do we believe, as some arguments advanced by appellees on the same point would seem to suggest, that payment for transportation must be made in advance of an accident in order to avoid the guest status of a passenger in an automobile.

The gist of appellees' next argument is based upon the premise that a petition which seeks to avoid application of the guest statute must contain an affirmative allegation the agreement for payment therein alleged was the motivating cause for the transportation furnished in order to state a cause of action. This contention, it is to

be noted, is not limited to the force and effect to be given the allegations of the instant petition but relates to petitions generally in actions such as are here involved. To sustain it, as stated and argued, would place too great a burden upon the framers of petitions of the involved or any other petition where—as here—the challenged pleading is subject to a liberal construction. The true test in our opinion is whether such a pleading, when challenged by a demurrer, contains allegations of fact which, when given the benefit of entitled reasonable inferences are to be construed as disclosing the agreement for payment was the motivating cause for the transportation furnished. If it does, assuming arguendo its other allegations are sufficient, it states a cause of action regardless whether it contains an express or affirmative allegation to that effect. In reaching this conclusion we have not overlooked the statement "When plaintiff's cause of action is predicated upon a fact essential to his recovery that fact must be pleaded as well as proved." appearing at page 232 in the opinion of *In re Estate of Kerschen*, 176 Kan. 226, 269 P. 2d 1033, on which appellees rely as support for their position. That was a case where no attempt whatsoever was made to plead facts of the character just mentioned and the statement relied on is not to be construed as warranting a conclusion contrary to the one above indicated.

What has been heretofore stated does not mean that the involved petition states a cause of action. Heretofore we have pointed out rules, which will not again be repeated, applicable to the construction of a petition even though its allegations are entitled to the benefit of all reasonable inferences. We therefore now direct our attention to what we deem the decisive question involved on appellate review.

Reviewing the petition as heretofore quoted in the light of all rules to which we have previously referred, including the rule of liberal construction, nothing will be gained by repeating in detail the allegations there to be found. Highly summarized and limited strictly to factual averments deemed to be decisive, it suffices to say that when carefully analyzed, the petition alleges that during the month of April, 1953, Randal Dikeman, the appellant, and other persons therein named were members of the Order of the Eastern Star, a fraternal organization; that as members of such Order they had been chosen as delegates and representatives of their local Chapter to attend the Grand Chapter meeting of such Order at To-

peka; that in contemplation of the trip they were going to make appellant and Randal orally agreed that she would pay him a reasonable sum for transporting her to Topeka and back to Pratt; that pursuant to such arrangement Dikeman transported appellant, along with others not here involved, to Topeka, the purpose of the trip being to attend the Grand Chapter meeting of the Order mentioned at that city; that there Dikeman, appellant, and the others accompanying on the trip, discussed what each would pay him for their transportation from Pratt to Topeka and return and decided the amount thereof should be reasonable and finally fixed upon completion of the return trip; that thereafter all parties left Topeka in Dikeman's automobile for the return to Pratt but such trip was not completed due to the fact the vehicle in which all parties were riding was involved in an accident with a Missouri Pacific freight train at a railroad crossing at Turon, Kansas, resulting in the death of both Randal and his wife and serious injuries to the appellant.

Thus we come to the all decisive question in this case. Succinctly stated it is—under the facts, conditions and circumstances set forth in the petition, was appellant a guest within the meaning of the guest statute (G. S. 1949, 8-122b) as construed by our decisions? In approaching a decision of the foregoing question it must be conceded that our reports disclose no case where we have been called upon to decide the precise question here presented on the basis of identical facts. However, it is to be noted that on March 5, 1955, we did have occasion to decide the same question upon facts and circumstances so similar in character that our decision in *Bedenbender v. Walls,* 177 Kan. 531, 280 P. 2d 630, must be regarded as highly persuasive, if not decisive, of the present problem. There after an extended review of our own cases, as well as authorities from other jurisdictions, involving the interpretation and application of the guest statute, and a full and complete discussion of the reasons behind its enactment and the decisions construing its force and effect, we held:

"Plaintiffs, husband and wife, and defendant and his wife had been personal and social friends for years. They particularly enjoyed taking hunting trips together, and had done so on numerous occasions, alternating in the use of their automobiles. They had an understanding or agreement to the effect that when they drove defendant's car plaintiff husband would pay for gasoline, oil and meals for the four of them enroute, and *vice versa.* This practice had been adhered to in the past. In the fall of 1951 the parties decided to go on a pheasant hunting trip to Nebraska. It was mutually understood and agreed that they would adhere to their past arrangement with respect to payment

of the expenses above mentioned. On the morning agreed upon they started out in defendant's car. At noon they stopped for lunch. Plaintiff husband paid for it. Later on they stopped to buy gasoline. Plaintiff husband paid for it. Shortly thereafter, with defendant driving, the car was involved in a one-automobile collision. Plaintiffs sustained personal injuries, to recover for which each brought suit, alleging only ordinary negligence. The actions were consolidated for trial. Their evidence established only ordinary negligence. At the conclusion thereof defendant's demurrer thereto was sustained on the ground plaintiffs were 'guests' and that recovery was precluded by the provisions of the guest statute. Plaintiffs appealed.

"*Held:* The nature of the trip, being purely for social purposes and mutual pleasure and enjoyment of the parties, payment of the mentioned expenses by plaintiff husband amounted to nothing more than reciprocal hospitality and the exchange of social amenities between friends, and did not thereby transform plaintiffs' status into that of 'passengers for pay,' when, absent such exchange, they would be 'guests,' and therefore did not constitute 'payment for such transportation' within the meaning of the statute.

"Further *held:* The demurrer to plaintiffs' evidence was correctly sustained." (Syl. ¶ 7.)

Resort to the opinion in the foregoing decision and the record in the case at bar discloses only three material distinguishing features, one being procedural and the other two factual. As to the procedural feature it is to be noted we were there dealing with a demurrer to evidence and here a demurrer to the petition. This affords no ground for distinguishing the two cases for it must be conceded that if the facts pleaded by appellant in her petition come within the purview of the guest statute or preclude recovery because of its terms the question involved on a demurrer to that pleading would be no different than the one involved on a demurrer to her evidence. The first of the factual features mentioned springs from the fact that there the agreement in question called for pay by two of the persons being transported in an automobile for all expenses —in the nature of gasoline, oil and meals—incurred by the owner and operator of the automobile and his wife, while here the agreement relied on calls for the payment of a reasonable sum for transporting appellant. Again the difference affords no sound basis for distinguishing the cases. Our decisions (See *Sparks v. Getz*, 170 Kan. 287, 289, 225 P. 2d 106, and cases there cited) make no distinction in types of payment for transportation under the guest statute. Payment may be in money or compensation resulting in some other substantial benefit. The second of the two factual differences referred to arises from the nature of the trips involved. There the payment relied on was for transportation on a hunting

trip. Here it is for transportation to a meeting of a fraternal organization. It cannot be denied this last feature presents some difference from a factual standpoint. But does that difference make the two cases distinguishable when it comes to application of the principles governing whether appellant was a guest in the Dikeman automobile?

With the addition of a few words, appearing in parentheses and supplied by the author of this opinion, we believe the question last posed finds its answer in what is said at page 538 of the opinion in *Bedenbender v. Walls,* supra, which reads:

"The most that can be said of the situation is that the parties were engaged in a common enterprise, the purpose of which was mutual social pleasure and entertainment (and the furtherance of fraternal interests).

"The question is—were plaintiffs 'guests' within the meaning of the guest statute?

"The facts already have been related and will not be repeated. They clearly show a situation of common everyday experience to everyone—that of reciprocal hospitality and social courtesy between friends when the undertaking is for the mutual social (and fraternal) pleasure of the parties concerned. There was no relationship of mutual benefit between or among them other than of a social (and fraternal) nature. The payment of certain traveling expenses by plaintiff husband amounted to nothing more than the exchange of social amenities and did not transform plaintiffs' status into that of passengers 'for pay,' when, without such exchange, they would be guests, and consequently was not 'payment for such transportation,' within the meaning of the statute. To hold otherwise would compel every host to dilute his hospitality and season it with the flavor of a bargain. The record presented supports only the conclusion that the sole purpose of the trip was the joint pleasure of the parties. Friendship and sociability (and the furtherance of fraternal interests) were the basis of plaintiffs being in the car. In fact, we have no doubt but that at the time in question the parties would have resented any suggestion that their relationship was anything other than (fraternal,) social and for mutual pleasure. One occupying the status of a guest should not be permitted to accept a gratuity under mental reservation, and, by a trifling reciprocity, convert it into a binding agreement having legal consequences."

Having determined what is said and held in *Bedenbender v. Walls,* supra, is decisive of the sole question involved in this lawsuit we are constrained to conclude that under the facts as pleaded in the instant petition the trial court did not err in sustaining the demurrer to that pleading.

In reaching the conclusion just announced we have not been unmindful of arguments advanced by appellant to the effect the Bedenbender case is distinguishable because an automobile trip

to and from a lodge meeting is to be regarded as having business rather than social aspects. Whatever else may be said respecting its force and effect, which we do not here propose to labor, *Druzanich v. Criley,* 19 C. 2d 439, 122 P. 2d 53, 115 P. 2d 810 and 107 P. 2d 445, on which appellant relies to sustain her position on this particular point does not do so. To the contrary it holds that where the occupant and the driver of an automobile were delegates from their local union to the district conference of the United Cannery and Agricultural Workers of America, a labor union affiliated with the C. I. O., the driver and the occupant were not engaged in a business venture for their mutual advantage so as to constitute the occupant a "passenger," who had given "compensation" for transportation to the conference within the meaning of a statute containing provisions similar in substance to the guest statute here involved.

The judgment is affirmed.

WERTZ, J., dissenting.

SMITH, J. (dissenting): I am unable to agree with the opinion of the majority. The opinion places too great an emphasis on the fact that these people were attending a lodge meeting. I would much prefer that the case be tried so that the record might disclose the actual facts. On this petition I cannot distinguish this case from *Bedenbender v. Walls,* 177 Kan. 531, 280 P. 2d 630. That was a case under the guest statute. A demurrer to plaintiff's evidence was sustained. This court affirmed and I dissented. My views are the same in this case as they were when I dissented in that one and I discern no distinction—hence I cannot concur.

ROBB, J. (dissenting): I find myself unable to concur with the majority opinion in this case and I dissent therefrom for the following reasons:

At the outset I feel that the case before us is distinguishable from *Bedenbender v. Walls,* 177 Kan. 531, 280 P. 2d 630, for the reason that the facts, contracts of payment, and the status of the proceedings are different. In the Bedenbender case, *supra,* the trip had just begun, there was no definite amount of payment nor one alleged or proved that was ascertainable. Thus, in that case, the contract for payment could not have been enforced while here the trip for all practical purposes had been completed and the contract could

have been enforced by the driver because a definite amount for transportation was alleged in the petition.

This brings us to the status of the proceedings. In the Bedenbender case the appeal was from a ruling of the trial court sustaining a demurrer *to the evidence*. The case here under consideration was appealed because of a ruling of the trial court sustaining a demurrer *to a petition*. The pleadings and proof in the Bedenbender case show that the one and only cause for the trip was a common social venture purely for pleasure. In the present case the parties were delegates of a fraternal organization to a convention held in Topeka. I cannot agree that under such facts the sole and only purpose, cause, or motivating influence for the trip or transportation was social or pleasure. The status of a person riding in a car depends upon the facts and circumstances of the particular case. Decisions of other jurisdictions, while not conclusive, are somewhat helpful since other states have statutes similar to ours. This is especially true of the state of California from which jurisdiction appellant cited several cases. See *Druzanich v. Criley*, 19 C. 2d 439, 122 P. 2d 53, 115 P. 2d 810 and 107 P. 2d 445; *Whitechat v. Guyette*, 19 C. 2d 428, 122 P. 2d 47, 115 P. 2d 814; *Whitmore v. French*, 37 C. 2d 744, 235 P. 2d 3; *Harris v. Harfmann*, 113 C. A. 2d 615, 248 P. 2d 501. Whether a person is a "guest" when riding with another sometimes resolves itself into a question of fact for the jury or the trial court to determine. (5 Am. Jur., Automobiles, § 239, p. 634.) I hesitate to enlarge the "guest statute" to the extent that whenever the driver is a friend of the party riding with him there is a community of interest which may be in part social or pleasure and the rider is a "guest" irrespective of compensation to or benefit derived by the driver as a result of the transportation. (60 C. J. S., Motor Vehicles, § 399 [5].) Without laboring the matter further, I think the opinion in the Bedenbender case is sound under the facts and circumstances therein contained, but those same facts and circumstances are not here involved. I believe the judgment and order of the trial court sustaining the demurrer to the petition should be reversed.