No. 47,698

A. J. FREEMAN, NELLIE FOLEY, BERTHA CHARLES, and S. H. MC-
BROOM, *Appellants,* v. RUTH JENKINS, *Appellee.*

(542 P. 2d 287)

Opinion filed November 8, 1975.

*Hylton Harman,* of Kansas City, argued the cause, and *Glenn E. McCann,*
of Kansas City, Missouri, was with him on the brief for appellants.

*John J. Jurcyk, Jr.,* of McAnany, Van Cleave & Phillips, of Kansas City,
argued the cause and was on the brief for appellee.

The opinion of the court was delivered by

FATZER, C. J.: This action sought to recover damages for wrong-
ful deaths and personal injuries resulting from an automobile col-
lision.

On the morning of June 12, 1969, the defendant-appellee, Ruth
Jenkins, was driving to the home of Dr. and Mrs. Bingham, who
reside in the vicinity of 72nd Street and State Avenue, Kansas City,
Kansas. She was accompanied by Nellie Foley, Bertha Charles,
Bessie Freeman and Mabelle McBroom. All of the occupants of
the vehicle were members of Sunflower Chapter No. 2 of the
American War Mothers.

The American War Mothers had scheduled a picnic at the home
of Dr. and Mrs. Bingham on June 12. Mrs. Charles, Mrs. Foley
and Mrs. Freeman met the defendant Ruth Jenkins at the church
for the purpose of riding with her to the Bingham home. Mrs.

McBroom was picked up at her home shortly after the other ladies left the church. The accident in question took place as the five ladies were enroute to the Bingham residence.

The defendant, Ruth Jenkins, proceeded west on State Avenue to the point where that avenue intersects 72nd Street. State Avenue at that intersection consists of two westbound lanes of traffic separated by a median strip from the two east-bound lanes of traffic. A left turn was executed by defendant Jenkins who then stopped at the stop sign in the median strip. At this point the Jenkins' automobile was stopped facing south on 72nd Street. Defendant Jenkins left the stop sign and proceeded south. As the Jenkins' vehicle was crossing the inside eastbound lane of State Avenue, it was struck on the right side by an east-bound automobile driven by defendant Ronald Lee Van Cleave. At the time of the accident, the defendant Van Cleave was on a business errand for his employer, defendant Edward Placencia, doing business as Plaza Auto Parts.

Mrs. Freeman and Mrs. McBroom died as a result of the accident and the others were seriously injured.

On November 9, 1970, an action was brought by Nellie Foley and Bertha Charles, individually, for damages for personal injuries, and by the husbands and sole heirs of Bessie Freeman and Mabelle McBroom for damages for wrongful death. The action was brought against Ruth Jenkins, Ronald Lee Van Cleave and Placencia. The latter two defendants were dismissed from the action shortly before trial following a settlement agreement.

The defendant Jenkins had filed a motion for summary judgment which was denied. The case proceeded to trial by jury against the defendant Jenkins, and at the close of the plaintiff's evidence the district court directed a verdict in favor of the defendant.

The plaintiffs appealed and the defendant cross-appealed. The issues raised by the appellants all revolve around the Kansas Guest Statute. (K. S. A. 8-122b, now repealed.)

In their brief, appellants raised the issue of the Kansas Guest Statute's constitutionality, but conceded at oral argument that the constitutional question was not before the court. In *Vaughn v. Murray*, 214 Kan. 456, 521 P. 2d 262, we stated:

"The law as declared in the overruling decision of *Henry v. Bauder* [213 Kan. 751, 518 P. 2d 362], (holding Kansas guest statute unconstitutional) shall be given retroactive application to all similar cases pending in the courts of this state on January 26, 1974, and to cases filed thereafter regardless of

when the causes of action accrued with the following exception: When a judgment or a verdict has been entered in a district court prior to January 26, 1974, and the same is free of reversible error under the law then existing, the law as declared in *Henry v. Bauder*, supra, shall not apply unless the constitutional question decided in the overruling decision has been timely presented to the trial court." (1. c. 467.)

The case now before us was disposed of in March, 1973, and the constitutional question was not presented to the district court; thus, the *Bauder* case has no retroactive effect on the decision before us for review.

The appellants contend that even though the Kansas Guest Statute (K. S. A. 8-122b) is to be applied, the district court erred in holding they were guests within the purview of the statute. K. S. A. 8-122b reads:

"Right of guest to collect damages from owner or operator. That no person who is transported by the owner or operator of a motor vehicle, as his guest, without payment for such transportation, shall have a cause of action for damages against such owner or operator for injury, death or damage, unless such injury, death or damage shall have resulted from the gross and wanton negligence of the operator of such motor vehicle."

In construing the guest statute, it has many times been held that whether a person is a "guest" within the meaning of the statute depends upon the facts and circumstances of each particular case. *Carruth v. Cunningham*, 207 Kan. 781, 486 P. 2d 1401.

We will briefly state the material facts in the case before us. As indicated, all of the occupants of appellee's automobile were members of the American War Mothers. This organization's purpose is to assist disabled veterans and their families. The members of the local chapter sewed items of clothing for disabled veterans in the nearby veterans' hospital, and they assisted veterans' families in need. The local chapter regularly gathered for sewing meetings, business meetings, visits to the veterans' hospital, and other social functions.

The same women usually rode with appellee to the meetings. There was no agreement as to compensation, and appellee had never asked to be paid. However, the passengers often made small contributions of 25 cents to 50 cents. The contributions were not made on a regular basis, and when made were dropped into appellee's purse by the passenger sitting in the front seat with the driver. On the day of the accident there was no arrangement for payment and no payment was made.

In *Bedenbender v. Walls,* 177 Kan. 531, 280 P. 2d 630, we held:

". . . In determining the question whether a person is or is not a 'guest' within the meaning of the statute, among the many elements to be considered are the identity and relationship of the parties; the circumstances of the transportation; the nature, type and amount of 'payment'; the benefits or advantages resulting to the respective parties growing out of the transportation; whether the 'payment,' of whatever nature, constituted a tangible benefit to the operator and was the motivating influence for furnishing the transportation; and the nature and purpose of the trip." (Syl. ¶ 4.)

In *In re Estate of Dikeman,* 178 Kan. 188, 284 P. 2d 622, we relied on *Bedenbender* in deciding that passengers in a vehicle occupied entirely by members of the Order of the Eastern Star, a fraternal organization, enroute to a chapter meeting, were guests within the guest statute notwithstanding an agreement to pay the driver for their transportation. The analogy between fraternal interests in *In re Estate of Dikeman* and patriotic or humanitarian interests in the instant case is persuasive.

In *Carruth v. Cunningham,* supra, also following *Bedenbender,* we stated:

"When the purpose of an automobile excursion is purely for social purposes, mutual pleasure and the enjoyment of the parties, an incidental payment for gasoline by the person being transported does not constitute 'payment for such transportation' within the meaning of the statute." (Syl. ¶ 3.)

Also in *Rothwell v. Transmeier,* 206 Kan. 199, 477 P. 2d 960, we stated:

"We have been cited to no Kansas case, and our research has disclosed none, which holds that a benefit to the driver or mutual benefit to the driver and the passenger has been sufficient to permit the passenger plaintiff to escape the guest statute, unless some business aspect was present. Social benefits and pleasures, whether mutual or otherwise, have been held insufficient to escape the guest statute." (l. c. 205.)

In the case before us, this court would hesitate to classify the voluntary work done by the members of the American War Mothers as a "business." The parties were involved in a common enterprise whose purpose was the furtherance of patriotic and humanitarian interests. When the collision occurred, the ladies were enroute to a social function. The trip involved no financial or mercenary motives between the parties. There is not the slightest suggestion that appellee would not have made the trip had the other occupants been absent.

We conclude the district court did not err in holding appellants were guests within the purview of the Kansas Guest Statute.

The appellants next contend the district court erred in directing a verdict, because there was sufficient evidence to establish a *prima facie* case of gross and wanton negligence on the part of the appellee. As hereafter indicated, the contention cannot be sustained.

The test to be followed in evaluating evidence on a motion for a directed verdict has been frequently stated. In *Sexsmith v. Union Pacific Railroad Co.*, 209 Kan. 99, 495 P. 2d 930, we held:

"Our cases are legion that upon a challenge to the sufficiency of evidence on an issue of fact by motion for a directed verdict, the court may not weigh conflicting evidence, but is required to resolve all facts and inferences reasonably to be drawn from the evidence in favor of the party against whom the motion is leveled; and if the evidence is of such character that reasonable minds may reach different conclusions thereon, the motion for directed verdict must be denied and the issue submitted to the jury. . . ." (l. c. 102.)

What constitutes gross and wanton negligence as used in the guest statute has been considered by this court on many occasions. In *Reynolds v. Estate of Stanosheck*, 206 Kan. 714, 716, 482 P. 2d 440, we summarized numerous cases as follows:

"In *Srajer v. Schwartzman*, 164 Kan. 241, 188 P. 2d 971, it was held:

" 'Gross and wanton negligence' within the meaning of such statute means wantonness, or willful and wanton conduct. There must be a realization that danger of injury to another is imminent, and conduct indicating an indifference to whether such injury results." (Syl. ¶ 3.)

"In *Frazier v. Cities Service Oil Co.*, 159 Kan. 655, 666, 157 P. 2d 822, it was held:

". . . [T]o constitute wantonness, the acts complained of must show not simply lack of due care, but that the actor must be deemed to have realized the imminence of injury to others from his acts and to have refrained from taking steps to prevent the injury because indifferent to whether it occurred or not. If the actor has reason to believe his act may injure another, and does it being indifferent to whether it does or not, he is guilty of wanton conduct." (Syl. ¶ 5.)

"In *Muhn v. Schell*, 196 Kan. 713, 413 P. 2d 997, it was held:

"The mental attitude of the wrongdoers, rather than the particular negligent act or acts, tends to establish wantonness, and whether the necessary elements are present to constitute wantonness must of necessity depend on the facts and circumstances of each particular case." (Syl. ¶ 2.)

The evidence before the district court when it ruled on the motion for a directed verdict may be briefly summarized:

When appellee made the left turn to go south on 72nd, she observed and stopped at the stop sign on the median strip before crossing the eastbound lanes of State Avenue. She waited at the stop sign, observed oncoming traffic, and started up from the stop sign

in her normal manner. Her vehicle was struck in the right rear as it crossed the eastbound lanes of State Avenue. Soon after the accident appellee stated she thought she had time to get across.

The occupants of appellee's car had been riding with her for several years and had no complaints about her driving. Appellee admitted she was aware of the dangerous nature of State Avenue. There was conflicting testimony as to whether traffic was heavy on the day of the accident.

In directing a verdict for the appellee, the district court concluded there was no evidence to show gross and wanton negligence on the part of Ruth Jenkins upon which reasonable minds could differ. We are of the opinion it did not err. Giving the evidence the benefit of all reasonable inferences that may be drawn therefrom and construing it in the light most favorable to appellants, we believe the most that can be said is that appellee may have misjudged the speed and distance of the vehicle driven by Van Cleave. This error in judgment would not constitute gross and wanton negligence.

Other points have been raised, but they are not determinative of the appeal and will not be discussed.

The judgment is affirmed.

MILLER, J., not participating.